IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 8, 2005 Session

## MATTHEW DWIGHT WEBB v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Coffee County**
**No. 32,746     Gerald L. Ewell, Sr., Special Judge**

_____

**No. M2004-00713-CCA-R3-PC - Filed May 3, 2005**

_____

The petitioner, Matthew Dwight Webb, appeals as of right the dismissal of his petition for post-conviction relief by the Coffee County Circuit Court. He seeks relief from his conviction for rape and sentence of eight years. The petitioner contends that he received the ineffective assistance of counsel and that his guilty plea was not voluntary. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Thompson G. Kirkpatrick, Manchester, Tennessee, for the appellant, Matthew Dwight Webb.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Senior Counsel; Charles Michael Layne, District Attorney General; Jason Michael Ponder, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The petitioner was initially indicted on October 16, 1997, for two counts of rape, a Class B felony. Several trial dates were set in the years following and continuances were granted for reasons not relevant to this appeal until the petitioner failed to appear in court for his trial date of January 17, 2002, due to alcohol intoxication. The trial was rescheduled for April 26, 2002, but a few days beforehand the petitioner decided to accept the plea agreement offered by the state. He appeared in court to plead guilty on April 24, but the court reporter was not present and the hearing was rescheduled. The petitioner subsequently decided he would rather go to trial, and on April 26, a jury was impaneled. The court adjourned for the weekend, and before court reconvened, the petitioner changed his mind again and decided to plead guilty. He ultimately pled guilty to one count of rape on April 29, 2002, and received a sentence of eight years in the Department of Correction.

At the plea hearing, the parties stipulated the following as a factual basis for the plea: "[I]f the case had gone to trial, the State's proof briefly would have been on or about August 31, 1997, the [petitioner], Mr. Webb, entered an apartment at Ada Ferrell Apartments in Tullahoma, Tennessee, and with force or coercion, did sexually penetrate Ms. Renee Taylor, the victim." Thereafter, the petitioner was sworn and the trial court asked him if his guilty plea was free and voluntary, made without threat or fear, and if he understood the nature of the charges against him. The petitioner responded affirmatively. The trial court also asked the petitioner if his attorney advised him regarding the elements of the offense charged, the burden of proof required, and the defenses available to him. The petitioner replied, yes. The petitioner acknowledged that his sentence would be eight years in the Department of Correction at eighty-five percent release eligibility and that he understood the rights he would be waiving by pleading guilty, i.e., the right to a speedy trial by jury, the right to confront witnesses, the right to compulsory process, and the right against self-incrimination. He said he understood that he had the right to counsel at all stages of his case and that there would be no further trials or hearings. When asked if he had been promised anything in exchange for his guilty plea, he replied that he was to be "first on the list to get out" of the facility in which he was confined. The trial court responded it had no control over this matter, and the petitioner said he understood. The trial court asked if he had any complaints regarding his attorney's representation of him in this case, and the petitioner said no. The trial court dismissed the petitioner's second count of rape and his indictment for failure to appear.

Thereafter, the petitioner filed a petition alleging that he received the ineffective assistance of counsel and that his guilty plea was involuntarily entered without understanding the nature and consequences of the plea. He alleged that he was mentally incompetent on the day of the plea hearing and that the trial court failed to follow the procedures set forth in Tenn. R. Crim. P. 11 and State v. Mackey, 553 S.W.2d 337 (Tenn. 1997).

At the post-conviction hearing, the petitioner testified that his attorney started representing him approximately one month after he was indicted on the rape charges in October 1997. He said that they discussed the plea bargain and sentence of eight years offered by the state in 1997 but that he refused the offer because he was innocent. He admitted that he failed to appear for his trial date in January 2002 but said that he was not responsible for any of the other continuances granted in his case. He said he failed to appear in January 2002 because he was drunk that day. He said he became aware he missed his trial when he reported to the jail two days later to begin his sixty-day sentence of incarceration on a third DUI charge. He said he was incarcerated from that point until the date his trial was scheduled to begin in April 2002.

The petitioner said that he and his attorney never discussed a trial strategy or a defense theory and that he did not recall seeing copies of the indictments. However, he said his attorney informed him that if the case went to trial, they would proceed on a theory of mistaken identity if they were successful in suppressing the DNA evidence. He said that he met with his attorney four or five times between 1997 and 2002 but that they discussed only plea bargains. He said his attorney would "boost" him up one day, talking "good and nice" to him, and the next day he would bring him down by "drilling" him with a plea bargain. He said his attorney "pretty much demanded" that he plead

guilty because it would be easier for everyone involved not to go to trial. He said his attorney informed him that if he went to trial he could receive a sentence of more than eight years on the rape charge and possibly be convicted on the failure to appear charge. He said that he was dissatisfied with his attorney's representation but that he had already paid his attorney to represent him in this matter. He said that his drinking problem prevented him from being able to afford hiring another attorney.

Regarding the two counts of rape, the petitioner said he was drinking a great quantity of vodka on the night he went to the victim's apartment. He said that they had sexual intercourse and that she went to the bathroom afterward. He said that when she returned, she smacked him and told him to get out. When asked whether he had forced himself on her, he responded, "As far as trying to have sex with her, probably, but not–it was all good and dandy between us when we had sex, you know what I'm saying? Just like a man would do, 'Hey,' you know." He said he recalled his guilty plea but did not remember whether the trial court questioned him regarding his constitutional rights. He said he did not understand the process of pleading guilty because he was paranoid and afraid that someone would slip him the wrong papers. He said that during the four and one-half years since his indictments for rape, he never intended to plead guilty.

On cross-examination, the petitioner acknowledged that his attorney discussed his plan to use mistaken identity as a defense at trial. He admitted that in his first statement to police officers regarding the rape charges, he said he did not remember much about the night of the alleged rape because he was drunk and also that he was drunk when he made the statement. He recalled telling the trial court at the plea hearing that his guilty plea was freely and voluntarily made but did not recall answering other questions. He said that he was mixed up that day and that it was still foggy to him. He said he was frightened of his attorney and of what would happen if they went to trial. He said he expected his attorney would use "tricks" and sabotage his case.

David Pate testified that he was the executive director of the Family Counseling Center of Manchester, Tennessee, and that he interviewed the petitioner at the request of counsel. He said the interview revealed the following: The petitioner was a heavy drinker, consuming alcohol daily for ten to fifteen years. His drug of choice was alcohol, but he also took pain killers and anxiety medication and used marijuana to increase the alcohol "buzz." He confessed to having problems thinking clearly and using words to express himself. He realized he had a problem with alcohol. Mr. Pate testified that after an abuser quits using alcohol and drugs, it takes the human body approximately forty-eight to seventy-two hours to eliminate most of the harmful substances. He said that after detoxification, a person will begin to think more clearly but that permanent damage can occur in cases where alcohol and drugs were abused in the amounts used by the petitioner. Mr. Pate said he could not offer an opinion as to whether the petitioner's thinking was impaired on the day of his plea hearing.

The petitioner's attorney testified he was hired by the petitioner's father on March 26, 1998, to represent the petitioner concerning the two rape charges and his third DUI charge. He said the trial strategy in the petitioner's rape case was complicated by his statement to the police in which

he claimed he did not know the victim or have sex with her. He said the police investigators had a positive match between the petitioner's DNA and the DNA in the semen on the victim's panties. He said that if they were not successful in suppressing the DNA evidence, which they were not, the defense theory would change from mistaken identity to arguing that his sexual encounter with the victim was consensual. He said arguing consent posed problems because the petitioner should testify and his prior convictions would be revealed. He said he filed numerous motions in limine and met with the petitioner "more times than he could count" in preparing for trial. He said the state offered a plea agreement with an eight-year sentence in May 1998, which the petitioner said he was not interested in because he was innocent. When asked if he pressured the petitioner to plead guilty, the attorney responded, "yes and no." He explained that the felony failure to appear charge from the trial missed in January 2002 could have changed the range or offender classification for sentencing and that opting to accept the minimum eight-year punishment became more attractive for that reason. He said the consent theory posed additional problems because the defendant had previously admitted to the police that he was intoxicated on the evening of the alleged crime and that he did not recall being with the victim. He said that success at trial would have depended on who was more credible–the petitioner or the victim.

The petitioner's attorney testified that he visited the victim's apartment where the alleged rape occurred and that he interviewed neighbors, prepared maps, and took pictures of the area. He said he sent copies of the sentencing guidelines, the relevant statutes, and the indictments to the petitioner. He said that he and the petitioner reviewed this material and also discussed the plea agreement and its conditions. He said that the petitioner had conditions to accepting the plea agreement and that one of them was to be transferred from the jail facility immediately. He said he spoke with Pam, the jail administrator, whom he brought to see the petitioner so they could discuss what could be done about a transfer. He said that he had witnesses prepared to testify at trial and that he issued subpoenas to some of them on the day of trial at their request so that their absence from work would be excused. He said he investigated the victim's background but discovered nothing that could be used at trial. He said that the petitioner's father hired a private investigator to assist with the case but that the investigator skipped town without giving them any information. He said he offered to interview any witnesses whose names were given to him. Regarding a speedy trial, he said that the petitioner clearly did not receive one and that he did not push for one. He said that this was a tactical choice on his part because, in his opinion, the state's case grows worse with age. With regard to the brief statement constituting the factual basis for the plea and whether it satisfied legal requirements, he responded it was a matter for the judge to decide.

On cross-examination, the petitioner's attorney said he had reviewed the petitioner's constitutional rights with him more than once in the years before trial. He said that he noticed a change in the petitioner's ability to communicate and his mental capacity after he "dried out" in jail in the months before the plea hearing and that the petitioner was more cogent and clear as a result. He said that when the petitioner was sober, he was very intelligent and could discuss many issues.

Rhonda Poole Meyers, the petitioner's sister, testified she was present during the plea hearing and she heard the petitioner's attorney tell him that the agreed sentence was down to six to eight

years but that he could receive a sentence as high as fourteen years if he was convicted following a trial. She said she had the impression the petitioner was being pressured into pleading guilty.

Robert Carter, an attorney, testified that the petitioner's attorney asked him to assist with the defense of the petitioner in 1998 but that he began participating actively in Fall 2001. He said he has been involved in approximately two thousand criminal prosecutions during his career. He said that he had agreed with the petitioner's attorney regarding the trial strategies and that he had advised the petitioner it was in his best interest to plead guilty. He acknowledged that he had contact with the petitioner prior to his incarceration in January 2002 and that he noticed distinguishable differences in his attitude and ability to communicate when he saw him again in April 2002. He said that the petitioner appeared calm and was well-dressed in April and that he and the petitioner's attorney had a lengthy discussion with the petitioner before his plea hearing regarding the merits of his case, the evidence against him, and what they thought were his chances of success.

On cross-examination, Mr. Carter testified that he was present at the plea hearing and that in his opinion, the defendant knew what he was doing when he pled guilty. Regarding the background check of the victim, he opined that the facts did not meet the requirements for Rule 412, Tenn. R. Evid., and said that he would not have handled the background issue differently than did the petitioner's attorney.

In denying the petitioner relief, the trial court credited the testimony of the petitioner's attorney "in any and all instances wherein petitioner's testimony conflicts with that of [his attorney]" and rejected that of the petitioner as "unbelievable." It found that the petitioner entered a knowing and voluntary guilty plea, having cleared his mind of the debilitating effects of alcohol during his incarceration of 163 days before the plea hearing, and that the court substantially complied with Rule 11, Tenn. R. Crim. P., Mackey, and Boykin v. Alabama, 395 U.S. 2998, 80 S. Ct. 1709 (1969), in accepting the guilty plea. The trial court concluded that the petitioner's attorney provided him the effective assistance of counsel in all pre-trial and guilty plea proceedings and found that the petitioner's numerous grievances were not supported by the evidence presented at the hearing.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner contends that he received the ineffective assistance of counsel because his attorney failed to develop a defense strategy, prepare adequately for trial, dispose of the felony failure to appear charge in the guilty plea petition, investigate the petitioner's case adequately, and issue witness subpoenas in advance of the first day of trial. The state contends that the record supports the trial court's conclusion that the petitioner received the effective assistance of counsel.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's

performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). In other words, a showing that counsel's performance fell below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. To satisfy the requirement of prejudice when the petitioner entered guilty pleas, the petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991). In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

In support of his claims that his attorney failed to formulate a meaningful trial strategy and prepare adequately for trial, the petitioner points to the length of time between his ultimate trial date in April 2002 and his indictments in October 1997. However, the petitioner's attorney testified that refusing to push for a speedy trial was a tactical decision. Regarding defense theories and trial strategies for the petitioner's case, the record reflects that the case was complicated by various factors, not the least of which were the petitioner's charge for failure to appear, the DNA evidence linking the petitioner to the alleged crime, and his false statement to the police that he was nowhere near the victim on the date the rape occurred. Contrary to the petitioner's claims, the attorney said that he had contemplated two defense theories, one of which was thwarted by the trial court's denial of the motion to suppress the DNA evidence, and that he had witnesses ready to testify at trial. He explained he issued subpoenas on the day of trial only at the request of those witnesses who needed documentation to excuse their absence from work. The petitioner's attorney testified that he had visited the victim's apartment where the alleged rape occurred, interviewed neighbors, prepared maps, and taken pictures of the area.

The petitioner also claimed he did not see copies of the indictments. His attorney testified that he sent copies of the sentencing guidelines, relevant statutes, and indictments to the petitioner and that he and the petitioner reviewed the material and discussed the plea and its conditions. As for the petitioner's claim that his attorney failed to dispose of the felony failure to appear charge in the guilty plea petition, the record reflects that the trial court dismissed the indictment for failure to appear along with the petitioner's second count of rape at the conclusion of the plea hearing. The

-6-

trial court found that, based upon the credible testimony presented, the petitioner's attorney conducted himself as befitting a competent attorney in the representation of a client charged with a serious crime. The record does not preponderate against the trial court's findings.

## II. GUILTY PLEA

The petitioner contends that his guilty plea was involuntarily, unknowingly and unintelligently entered because (1) the trial court failed to follow the procedures set forth in Rule 11, Tenn. R. Crim. P., and State v. Mackey, 553 S.W.2d 337 (Tenn. 1997), (2) he was incoherent on the day of the plea hearing due to alcohol abuse, and (3) his attorney pressured him to plead guilty to avoid having to develop a trial strategy. The state contends that the petitioner's guilty plea was knowing and voluntary and that any errors committed by the trial court in accepting the guilty plea were harmless beyond a reasonable doubt.

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. See State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). These circumstances include

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). A plea resulting from ignorance, misunderstanding, coercion, inducements, or threats is not "voluntary." Id.

The trial court is charged with determining if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999); Blankenship, 858 S.W.2d at 904. In Boykin v. Alabama, the United States Supreme Court clearly enunciated that certain constitutional rights are implicated in a plea of guilty, namely, the right to a trial by jury, the right to confront witnesses, and the privilege against compelled self-incrimination, and that it would not presume a waiver of these three important rights from a silent record. 395 U.S. 238, 243, 89 S. Ct. 1709, 1712 (1969). Although these rights are repeated in Mackey and in Rule 11(c)(3), Tenn. R. Crim. P., only the constitutionally-grounded rights enunciated in Boykin, are addressable under the Post-Conviction Procedure Act. See State v. Prince, 781 S.W.2d 846, 853 (Tenn. 1989).

The petitioner relies, in part, upon the requirements for the taking of guilty pleas imposed by Mackey and Rule 11, Tenn. R. Crim. P., to argue that his guilty plea was not voluntary, knowing or intelligent. He contends the trial court failed to require an adequate factual basis for his guilty plea, inquire whether his willingness to plead guilty resulted from prior discussions with the prosecutor, and advise him that he was under oath at the plea hearing and that his statements could be used against him in later prosecutions for perjury. However, these inquiries are not linked to any of the specified constitutional rights in Boykin and are not cognizable in a suit for post-conviction relief. See State v. Neal, 810 S.W.2d 131, 137 (Tenn. 1991); Prince, 781 S.W.2d at 846. Post-conviction relief is available only when a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-105.

The record reflects that the trial court satisfied the requirements of Boykin. During the colloquy between the petitioner and the trial court at the plea hearing, the trial court asked the petitioner if the plea was freely and voluntarily made and if he had been informed of the elements of the crime, burden of proof, and defenses. It also asked him if he understood the nature of the charges against him and if he was aware that by pleading guilty he was giving up the right to a trial by jury, the right to confront witnesses, and the right to self-incrimination.

As for the petitioner's argument that his mental incompetence on the day of the plea hearing due to alcohol abuse rendered his guilty plea void and that his attorney pressured him to plead guilty, the record is devoid of any proof to support these claims. The petitioner's attorney testified that once the petitioner "dried out," he was capable of cogent and clear thinking, and Mr. Carter testified that the petitioner was calm and well-dressed when they met in April. The trial court accredited the testimony of the attorney over that of the petitioner and found that the petitioner entered a knowing and voluntary guilty plea, having cleared his mind of the debilitating effects of alcohol during his incarceration of 163 days prior to the plea hearing. The record does not preponderate against the trial court's findings, nor does it reflect that the petitioner was pressured in any way by his attorney to plead guilty in order to avoid developing a trial strategy.

We conclude that the petitioner received the effective assistance of counsel and that his guilty plea was knowing and voluntary. Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE

-8-